374 So.2d 1223 (1979)
STATE of Louisiana
v.
Warren WALKER.
No. 64069.
Supreme Court of Louisiana.
September 4, 1979.
*1224 Frank J. Gremillion, Baton Rouge, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Ralph E. Tyson, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-respondent.
BLANCHE, Justice.
Defendant was convicted of receiving stolen goods of a value of less than $100 in violation of R.S. 14:69. He was sentenced to pay a fine of $250 or spend three months in jail. We granted writs. The evidence at the trial produced the following facts: On September 30, 1977 at about 1:00 a. m., the defendant, as he was walking along Jefferson Street in the City of Baton Rouge and carrying a brown paper bag, was stopped by two Baton Rouge City Policemen. According to the police, defendant was acting "suspiciously" and they therefore decided to ask him what he was carrying. The defendant then opened the brown paper bag and showed them what was later revealed to be a radio known as a "Bear Cat" scanner. Defendant stated that the "Bear Cat" had been purchased by his sister (or a cousin, as the officer testifying about the incident really could not remember) and that he believed there was a receipt for the "Bear Cat" in the house. With defendant's *1225 cooperation and consent, the officers accompanied the defendant to the house and were admitted only to learn from the cousin or sister that she had purchased the "Bear Cat" from one of the Woolco stores for $150 and that she had a receipt, but she was unable to find it despite a search. The officers then noted the serial number on the "Bear Cat" and said they would inquire at Woolco and would return if there was an indication that the "Bear Cat" had been stolen.
The next morning, one of the officers telephoned and spoke with the manager of the Plank Road Woolco store. The manager testified the serial number showed that the machine was from his store, but until the police called, he was not aware that the "Bear Cat" was no longer in the store since the inventory records indicated that it had not been sold. Upon cross-examination, the manager stated that the salesmen at his store did sometimes fail to fill in the inventory cards to show that items had been sold, but that they did not receive commissions unless the cards indicated sales. After receiving the information from the manager, the officers returned to defendant's house and with little or no persuasion, the defendant signed a form consenting to a search of the house and permitting the officers to seize anything found therein. Well, as one might guess, the officers seized the "Bear Cat", which was not hidden, and a Woolco price tag which was on the floor in one room of the house. They also placed defendant under arrest for receiving stolen things.
At trial, neither the "Bear Cat" nor the tag were introduced. The "Bear Cat" had been returned to Woolco and subsequently sold; a photocopy of the front of the tag was introduced. The police officers and the Woolco manager were the only ones to testify, and their testimony is essentially incorporated in the factual resume' hereinabove. The trial judge took the matter under advisement and found the defendant guilty as charged.
To prove the crime of receiving stolen things, the state must prove that the defendant procured, received or concealed the stolen thing under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of either a theft or robbery, State v. Walker, 350 So.2d 176 (La.1977). Our review of the record fails to disclose any evidence which would indicate that the defendant either knew or had any reason to know that the "Bear Cat" had been stolen. Accordingly, we would reverse the conviction for the reason that the state failed to prove an essential element of the crime except for the fact that the case is not in the proper procedural posture for us to make that judgment.
Counsel made no objection when the trial court rendered its verdict, nor did he move for a new trial after the verdict was rendered. Since the defendant did not present the court with an opportunity to rectify its error by a timely objection, written motion or other means, this Court will not consider an assignment on appeal unless it presents an error discoverable by a mere inspection of the pleadings and proceedings. Since an inspection of the evidence is necessary to determine whether there is any evidence of an essential element of the crime, this Court can not review this assignment on appeal. State v. Nelson, 367 So.2d 317 (La.1979).
However, we have noted another defect in the proceedings which will give the defendant another opportunity to have considered the error relied upon here. After the trial was concluded the court took the matter under advisement. Appearing in the minutes is a brief handwritten notation stating "Acc. fnd. guilty. Ct. ord. this matter fixed for sent. on Jan. 29, 1979, Rm. 804 at 9:30 a. m.; notify all." As in State v. Austin, 255 La. 108, 229 So.2d 717 (1969), where the minutes do not affirmatively show that defense counsel was present at the sentencing of the defendant for armed robbery, the minutes in the instant case do not affirmatively show that either the defendant or his counsel were present at the rendering of the verdict.
*1226 In derogation of the ordinary rule that the defendant is to be present at all critical stages of the proceedings, C.Cr.P. art. 833 provides in pertinent part:
"The court may permit a defendant charged with a misdemeanor to be arraigned, plead guilty, or be tried, in his absence, if he is represented by counsel who consents to proceed. Otherwise, he must be present."
Not only must counsel or defendant be present at the proceedings, but the record must indicate his presence. See State v. Austin, 225 La. 108, 229 So.2d 717 (1969). Thus, C.Cr.P. art. 833 is violated here since the minutes do not affirmatively show that either defendant or his counsel were present for this critical stage of the proceedings. This violation denied defendant the opportunity to object to the verdict or ask for a new trial. Since basic legal rights were adversely affected at this stage of the proceedings, defendant has been denied the protection provided by art. 833. (State v. Austin, supra).
For these reasons, the verdict and sentence of the district court is vacated and set aside and the matter is remanded to said court with instructions to render a verdict in accordance with the views herein expressed.
DIXON, J., dissents from the opinion as written. However, the record discloses that defendant's attorney argued that there was no evidence of an essential element of the offense. The argument was made at the conclusion of the State's case and defendant put on no evidence. Treating the argument as a motion for acquittal, it should have been granted and, defendant discharged. To this extent, I concur in the result.